UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STAR HYUNDAI, LLC d/b/a GENESIS OF
BAYSIDE,

                        Plaintiff,

          v.

GENESIS MOTOR AMERICA LLC,

                       Defendant.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

23-CV-2004
(Gujarati, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      This case arises from a dispute between Plaintiff Star Hyundai, LLC d/b/a Genesis of Bayside, and Defendant Genesis Motor America LLC, over a proposed modification to the Primary Market Area ("PMA") of Plaintiff's automobile dealership that allegedly violated the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law § 460 *et seq.* (the "Dealer Act"). *See* Dkt. No. 25 ¶¶ 1-3. Plaintiff originally filed and served its complaint against Defendant in the Supreme Court of the State of New York, Queens County, on February 23, 2023. *See* Dkt. No. 1 ¶ 1. On March 15, 2023, Defendant removed this action to the United States District Court for the Eastern District of New York, on the grounds of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *See id.* at 5-6.[1]

      Presently before the Court, on a referral from the Honorable Diane Gujarati, United States District Judge, is Plaintiff's motion, pursuant to 28 U.S.C. § 1447(c), to remand this action to the Supreme Court of the State of New York, Queens County (the "Motion"). *See generally* Dkt. No. 56; April 23, 2025 Text Order. In support of its Motion, Plaintiff argues that this Court lacks subject matter jurisdiction over the case due to a lack of standing under Article III of the U.S.

---

[1] Page citations are to ECF-stamped pages unless otherwise noted.

Constitution. *See* Dkt. No. 56-5 at 7-15. Defendant opposes Plaintiff's Motion. *See generally* Dkt. No. 57.

For the reasons set forth below, the undersigned respectfully recommends that the Court grant the Motion and remand this action to the Supreme Court of the State of New York, Queens County.

I.  **Relevant Background**

    A.  **Factual Background**

Plaintiff owns and operates a Genesis Motor America LLC ("Genesis") automobile dealership in Bayside, Queens, New York. Dkt. No. 25 ¶ 17. The dealership is franchised by Defendant, which is a limited liability company organized and existing under the laws of the State of California. *Id.* ¶¶ 2, 7, 19-20. Plaintiff alleges that "Genesis manufactures and/or distributes and sells, among other products, new and unused passenger vehicles under the Genesis brand name. *Id.* ¶ 20. Genesis sells these vehicles through dealers such as [Plaintiff] throughout the State of New York." *Id.*

At bottom, Plaintiff alleges that Defendant violated the Dealer Act by modifying Plaintiff's PMA, and seeks injunctive relief enjoining this modification, in addition to attorneys' fees and costs incurred in the prosecution of this action. *Id.* ¶¶ 3, 5. Plaintiff contends that this modification is an unfair franchise change prohibited by § 463(2)(ff) of the Dealer Act "because the change in PMA may substantially and adversely affect [Plaintiff's] rights, obligations, investment[,] or return on investment." *Id.* ¶ 32.

Specifically, according to the Amended Complaint, Plaintiff and Defendant are parties to a "Genesis Dealer Sales and Service Agreement with Standard Provisions (the 'Dealer Agreement')," which is purportedly a "'franchise' within the meaning of § 462(6) of the Dealer

2

Act." *Id.* ¶ 8.  Plaintiff alleges that in a letter dated January 20, 2023, Defendant notified it of plans, effective April 1, 2023, to modify Plaintiff's franchise agreement—in particular, to adjust the size of Plaintiff's PMA, "a geographic area which [Defendant] will designate from time to time for the sole purpose of evaluating [Plaintiff's] performance of its sales and service obligations hereunder." *Id.* ¶¶ 21, 25-26.  Plaintiff contends that this change would form an "open point in Rockville Centre," on Long Island, that Defendant "intends to fill with a new Genesis dealer." Dkt. No. 56-5 at 5; Dkt. No. 57 at 9.

According to Plaintiff, Defendant's January 20, 2023 letter contained a document stating that the intended PMA modification would work an 11.01% reduction of Plaintiff's "Registration Efficiency" score—"a metric Genesis purports to use to determine [Plaintiff's] compliance with its obligations under the Dealer Agreement." Dkt. No. 25 ¶¶ 27, 33-35.  Plaintiff further alleges that the Dealer Agreement grants Defendant the right to terminate Plaintiff's franchise if its Registration Efficiency score is unacceptable.  *Id.* ¶ 34.  Per Plaintiff, this reduction in Plaintiff's Registration Efficiency score "puts it at risk of [Defendant] declaring a default under the Dealer Agreement and terminating its franchise[,]" *id.* ¶ 35, which "may substantially and adversely affect [Plaintiff's] rights, obligations, investment or return on investment[,]" thus constituting an actionable violation of Section 463(2)(ff) of the Dealer Act.  *Id.* ¶ 32 (quoting Dealer Act § 463(2)(ff)(2)).

### B.    Procedural History

On January 13, 2025, Plaintiff filed this action against Defendant, via a summons with notice, in the Supreme Court of the State of New York, Queens County.  *See* Dkt. No. 1-1 at 2. As noted above, on February 23, 2023, Plaintiff filed and served its complaint on Defendant.  Dkt. No. 1 ¶ 1.  On March 15, 2023, Defendant removed this suit to the United States District Court for

3

the Eastern District of New York, claiming diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *See id.* ¶ 2.

On March 22, 2023, Defendant filed a pre-motion conference letter requesting leave to move under Rule 12(b)(6) to dismiss Plaintiff's complaint, alleging failure to assert any facts establishing that the PMA modification would "substantially and adversely affect [its] rights, obligations, investment or return on investment." *See* Dkt. No. 5 at 1-2 (quoting Dealer Act § 463(2)(ff)).

On March 29, 2023, Plaintiff filed its response, which expressed an intention to move for remand on the basis that Defendant's removal was untimely under 28 U.S.C. 1446(b), which provides for a 30-day deadline after receipt of the initial pleading by the defendant. *See* Dkt. No. 10 (citing 28 U.S.C. 1446(b)). Thereafter, the Court denied Defendant's pre-motion conference request pending resolution of Plaintiff's motion to remand. *See* March 30, 2023 Text Order.

On April 13, 2023, Plaintiff moved to remand, arguing, *inter alia*, that its January 13, 2023 summons with notice sufficed to trigger the 30-day removal deadline under 28 U.S.C. § 1446(b). *See* Dkt. No. 11-1 at 7. Accordingly, because Defendant had not removed the case until March 15, 2023, Plaintiff argued that the case should be remanded to state court. *See id*.

Defendant contended that its removal petition was timely because the summons with notice did not contain facts indicating the removability of the case; thus, the 30-day timeline did not begin until Plaintiff filed its complaint on February 23, 2023, which alleged facts regarding the citizenship of the parties and amount in controversy. *See* Dkt. 12 at 7-8.

Plaintiff's initial motion to remand was referred to then-United States Magistrate Judge Ramón E. Reyes, Jr. *See* July 20, 2023 Text Order. On September 12, 2023, Judge Reyes issued a Report and Recommendation that Plaintiff's motion for remand be denied. *See* Dkt. No. 16. The

4

sole issue addressed in Judge Reyes's Report and Recommendation was whether Defendant's notice of removal was timely; Judge Reyes determined that the notice was indeed timely. *See id.* at 9.

On November 13, 2024, this case was reassigned from Judge Reyes to the undersigned. *See* November 13, 2024 Text Order. On January 4, 2024, Judge Gujarati adopted Judge Reyes's Report and Recommendation in full, over Plaintiff's objections. *See* January 4, 2024 Text Order; Dkt. Nos. 18-20.

On January 12, 2024, Defendant renewed its request for a pre-motion conference to move to dismiss Plaintiff's complaint. *See* Dkt. No. 22. In response, on January 18, 2024, Plaintiff requested leave to amend its complaint to address certain assertions in Defendant's letter and add "allegations that a regulated and unlawful franchise modification occurred." Dkt. No. 23. The Court granted Plaintiff's leave to amend its complaint. *See* January 22, 2024 Text Order. Plaintiff filed the Amended Complaint on February 12, 2024. Dkt. No. 25.

On February 15, 2024, the Court held an initial conference at which discovery deadlines were set. *See* February 15, 2024 Minute Entry. Discovery was certified as complete on December 6, 2024. *See* December 6, 2024 Text Order.

On December 12, 2024, both parties requested pre-motion conferences in advance of anticipated cross-motions for summary judgment. *See* Dkt. Nos. 44, 45. On February 3, 2025, in a joint pre-motion conference, the Court raised the issue of standing *sua sponte* and requested the parties file a joint letter concerning subject matter jurisdiction. *See* February 3, 2025 Minute Entry. The parties filed their joint letter on February 24, 2025; Plaintiff argued it lacked standing and that the case should be remanded to the Supreme Court of the State of New York, Queens County. *See* Dkt. No. 52.

5

On April 1, 2025 the Court directed Plaintiff to file a supplemental motion to remand, and for Defendant to file a response. *See* April 1, 2025 Scheduling Order.

### C.     The Supplemental Motion for Remand

On May 14, 2025, Plaintiff filed its Motion, arguing that it lacked standing under Article III of the U.S. Constitution. *See* Dkt. Nos. 56, 56-5. Specifically, Plaintiff contends that neither of the two potential harms that it stands to suffer—"1) that [Defendant] will appoint a dealer in the Rockville Centre PMA; and 2) that [Defendant] will have grounds to terminate [Plaintiff's] franchise because its [R]egistration [E]fficiency score will go down as a result of the modification[,]" are sufficiently "concrete, particularized, or imminent"—suffice to confer standing. Dkt. No. 56-5 at 12. Plaintiff cites to Defendant's witness' deposition testimony, including that of Rule 30(b)(6) witness Robert Kenney, and David O'Brien, Defendant's National General Manager of Dealer Development, for the proposition that, despite Defendant's interim efforts, it had not found a suitable dealer for the Rockville Centre open point, that Registration Efficiency was a secondary metric for evaluating a dealer's performance, and that franchise terminations are unlikely and rare. *See id*. at 7-8, 9.

Plaintiff further argues that meeting the standard for articulating economic harm under Section 463(2)(ff) of the Dealer Act does not compel a finding of concrete and particularized injury sufficient to confer Article III standing. *Id*. at 12, 14. Plaintiff asserts that the Dealer Act does not have the same temporal imminency requirement of Article III standing. *See id*. at 14 (citing Dealer Act § 463(2)(ff)(2), which defines "modify" or "modification" as "any change or replacement of any franchise if such change or replacement *may* substantially and adversely affect the new motor vehicle dealer's rights, obligations, investment or return on investment.") (emphasis added). In short, Plaintiff argues that its claim is viable in New York state court, but that it lacks standing in

6

federal court. *Id.*[2] Plaintiff additionally argues that even if this Court accorded Plaintiff complete relief, it could not redress Plaintiff's harm, which Plaintiff ultimately alleges is the opening of a new dealer at the Rockland Centre open point. *See id.* at 6, 13. Thus, Plaintiff contends that Article III standing does not exist here, and the Court lacks subject matter jurisdiction over this case. *See id*.

On May 22, 2025, Defendant filed its opposition to Plaintiff's Motion, arguing, that the statute under which Plaintiff brings suit provides a cause of action only for an injury which is "substantial," "adverse," and "unfair." *See* Dkt. No. 57 at 6 (quoting Dealer Act § 436(2)(ff)(2)-(3)). According to Defendant, this standard exceeds the "lower threshold for a concrete injury under Article III," thus, if Plaintiff has a valid claim under Section 436(2)(ff) of the Dealer Act, it follows that Plaintiff has an injury sufficient to confer Article III standing. *See id.* at 6-7. Defendant also argues that, despite any standing deficiencies in the Amended Complaint, deposition testimony shows that Plaintiff's employees are actually concerned with preventing a new dealership from being established nearby, not any modification of their PMA, which supports the notion that establishment of such a dealership would cause concrete and imminent economic harm. *See id.* at 8-10.

Moreover, Defendant asserts that, were Plaintiff able to prevail in this litigation, this Court could grant complete relief to Plaintiff by preventing Defendant from adding a new dealer in close proximity to it, and in doing so, completely redress Plaintiff's alleged injury. *See id.* at 9-10. Thus, according to Defendant, Plaintiff's harm is redressable by this Court and Plaintiff has Article III standing. *See id*. Ultimately, Defendant contends that while the record shows that Plaintiff does

---

[2] Contemporaneous with its Motion, Plaintiff filed a motion to seal an exhibit to the Motion of deposition testimony purportedly containing sensitive and confidential business information. *See* Dkt Nos. 55, 55-1. Upon the Court's request for a joint letter clarifying whether Plaintiff intended to pursue the motion to seal, Plaintiff voluntarily withdrew the same. *See* July 31, 2025 Text Order; Dkt. No. 59.

7

not have a meritorious claim, Plaintiff's claimed injury is sufficient to meet the "minimal requirements" of Article III standing, and Plaintiff's Motion should consequently be denied. *Id.* at 2.

## II.     Legal Standards

### A.     Removal

"The federal district courts, as courts of limited jurisdiction, possess only such authority as is conferred by an act of Congress." *Portillo v. Bharara,* 527 F. App'x 48, 49 (2d Cir. 2013). "The right to remove a state court action to federal court on diversity grounds is statutory[.]" *Somlyo v. Lu-Rob Enters., Inc.,* 932 F.2d 1043, 1045-46 (2d Cir. 1991), *superseded by rule on other grounds*, Fed. R. Civ. P. 5(d)(4) & 83(a)(2). "Federal removal jurisdiction is limited under [28 U.S.C. § 1441(a)], to actions which could have been brought originally in federal courts[.]" *Northbrook Nat'l Ins. Co. v. Brewer,* 493 U.S. 6, 7 (1989). Under 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Jurisdiction pursuant to 28 U.S.C. § 1332(a) requires complete diversity between all plaintiffs and defendants. *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68 (1996); *Subbotovskiy v. Touro Univ.*, No. 23-CV-982 (JMA) (ST), 2023 WL 8829173, at *3 (E.D.N.Y. Dec. 20, 2023) ("[s]ubject matter jurisdiction may also be invoked under Section 1332, which provides that federal jurisdiction may be established where there is a diversity of citizenship between the parties and the amount in controversy exceeds $75,000.") (citing 28 U.S.C. § 1332).

The procedures and requirements for removal pursuant to 28 U.S.C. § 1441 are found in Section 1446 of the same title. *See Teamsters Local 404 Health Servs. & Ins. Plan v. King Pharms., Inc.,* 906 F.3d 260, 266 (2d Cir. 2018) (clarifying that Section 1446 "merely defines the

8

procedures relating to removal[.]").  Section 1446(a) requires that a defendant establish the grounds for removal and attach a copy of all process, pleadings, and orders served upon them in the prior state litigation.  *See Elliott v. Jaquez*, 777 F. Supp. 3d 136, 146 (E.D.N.Y. 2025) (internal citation omitted).

### B. Remand

Section 1447(c) of Title 28 provides for procedures after removal.  *See Lupo v. Human Affairs Int'l,* 28 F.3d 269, 271 (2d Cir. 1994).  Section 1447(c) requires that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) ("[T]he literal words of § 1447(c), which, on their face, give . . . no discretion to dismiss rather than remand an action.") (quotation omitted).

Removal jurisdiction is limited and "must be strictly construed," since removal implicates federalism concerns; failure to tread carefully caries a significant risk of the federal court overstepping the statutorily and constitutionally limited bounds of its jurisdiction.  *See Woolf v. Precision Techs. LLC*, 749 F. Supp. 3d 411, 416 (W.D.N.Y. 2024) (citing *In re NASDAQ Market Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996)); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (emphasizing that "[d]ue regard for the rightful independence of state governments" requires federal courts to "scrupulously confine their own jurisdiction to [its] precise [statutory] limits" (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934))). For this reason, the burden of proof lies with the party seeking to maintain the case in federal court, not with the party requesting remand.  *See Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction."); *see also R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651,

9

655 (2d Cir. 1979) ("the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'") (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 90 (2010)).

This standard of proof mandates a presumption that remand is justified "unless the removing party can demonstrate otherwise," *Woolf*, 749 F. Supp. 3d at 417 (quoting *Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000)). Furthermore, "[a]ny doubts as to removability should be resolved in favor of remand." *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001); *see also Somlyo,* 932 F.2d at 1046-48 ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.").

### C. Standing

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies." *See* U.S. Const. Art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*,

10

504 U.S. at 560). As noted in *Spokeo* and *TransUnion*, "a statutory violation alone, however labeled by Congress, is not sufficient for Article III standing[,]" because it lacks a sufficiently concrete injury-in-fact. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022); *see Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *TransUnion*, 594 U.S. at 426-27 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . .").

In a suit for injunctive relief, the Supreme Court has considered "a risk of future harm" to still establish Article III standing, provided "the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435-36 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 413-14 (2013)); *see also Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021). "[W]hether a[n intangible] harm qualifies as 'concrete' hinges on 'whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.'" *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 414). For a future harm to establish an injury-in-fact sufficient for Article III standing, it must also be "certainly impending" and "fairly traceable to [the alleged violation]." *Clapper*, 568 U.S. at 414. A conclusory declaration of an impending threat is not sufficient; rather, "the central inquiry" is whether "examined under the 'totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021)) (internal quotation marks omitted). "[F]or [a plaintiff] to have standing to sue, its alleged injury in fact must be plausible." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d Cir. 2011). "Assessing plausibility is 'a context-

11

specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Calcano*, 36 F.4th at 75 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Redressability is the "non-speculative likelihood that the injury can be remedied by the requested relief." *Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008) (quoting *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 106–07 (2d Cir. 2008)). "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (internal quotation marks omitted). Moreover, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04 (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

### III. **Discussion**

Because Plaintiff has established the lack of an injury-in-fact, and redressability, and thus, Article III standing, this Court lacks subject matter jurisdiction. Accordingly, remand of this case to the Supreme Court of the State of New York State, Queens County is appropriate.

As a preliminary matter, Defendant correctly notes that because the parties have completed discovery, the Court's consideration of the entire record is appropriate regarding evaluation of Plaintiff's standing. *See* Dkt. No. 57 at 5; *Lujan*, 504 U.S. at 561 (noting that each element of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation."). Relatedly, the Second Circuit recently noted that "once the parties 'have already incurred the expense of discovery,' th[e basis for the pleading standard] becomes inapposite." *Lugo v. City of Troy, New York*, 114 F.4th 80, 88-89 (2d Cir. 2024) (vacating district

12

court's standing determination regarding 12(b)(1) motion to dismiss where it "largely ignored the summary[]judgment record").

### A.     Injury in Fact

The facts alleged both in Plaintiff's Amended Complaint and as adduced through discovery demonstrate that Plaintiff has failed to demonstrate an injury that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical[,]'" sufficient to confer Article III standing. *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

In its Amended Complaint, Plaintiff contends that modification to its PMA would risk termination of its franchise. *See* Dkt. No. 25 ¶ 35. Specifically, Plaintiff contends that the proposed PMA modification would reduce its Registration Efficiency metric, which could allow Defendant to declare a default under the parties' franchise agreement and terminate it. *Id*. ¶ 33-35. On its face, this concern is too speculative and vague to serve as an injury-in-fact and confer Article III standing. *See Clapper*, 568 U.S. at 414 (noting that a feared future injury must be "certainly impending" to be the injury-in-fact on which a claim can rest). Indeed, the Amended Complaint only alleges that the modification to Plaintiff's PMA "*puts it at risk* of [Defendant] declaring a default under the Dealer Agreement and terminating its franchise," *see id*. ¶ 35 (emphasis added), but does not suggest any reasons why threat is certainly impending.

Moreover, deposition testimony submitted by Plaintiff in support of its Motion emphasizes that termination of the franchise based on changes to the PMA is unlikely, and that termination is generally a last resort when other primary efforts to improve a franchise's metrics have failed. *See* Dkt. Nos. 56-5 at 6-7; 56-2 at 14-16. Indeed, Mr. O'Brien—one of Defendant's witnesses— testified that, over the course of his career, he could only recall one dealer that was terminated. *See* Dkt. No. 56-5. Additionally, depositions of Defendant's witnesses demonstrate that despite

13

Defendant's alleged efforts, the Rockland Centre open point remains vacant and without a suitable dealer candidate to fill it. *See id.* at 8.

Defendant, alternatively, asserts that if Plaintiff has a potentially viable claim under Dealer Act § 463(2)(ff), Plaintiff must also have suffered an injury-in-fact, since a violation of the statute requires a change to a franchise agreement that "substantially and adversely affect[s] the [] dealer's rights, obligations, investment or return on investment." *See* Dkt. No. 57 at 6 (quoting Dealer Act § 463(2)(ff)(2) & (3)). Thus, by the very nature of the statute, Defendant contends, Plaintiff has alleged a sufficient injury-in-fact to confer Article III standing and preclude remand to state court. *Id*.

Defendant's argument is unavailing. Preliminarily, Defendant have cited no authority for the proposition that the Dealer Act is to be interpreted as "scrupulously" as Article III of the U.S. Constitution. *See generally Healy*, 292 U.S. at 270. Further, the plain language of § 463(2)(ff)(2), which states that the modification "*may* substantially and adversely affect" the franchisee's interests (*id.*) (emphasis added) contradicts Defendant's contention that a claim under Dealer Act § 463(2)(ff)(2) implies a "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical[,]'" injury sufficient to confer Article III standing. *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560); Dealer Act § 463(2)(ff)(2). Further, the testimony of Plaintiff's co-owner Michael Koufakis does not unambiguously demonstrate an economic injury-in-fact associated with a change to Plaintiff's PMA, as Defendant contends. *See id*. at 9. Indeed, the testimony relied upon by Plaintiff for the proposition that there are no concrete, immediate plans to open a new dealership in the Rockland Centre open point renders any such economic concerns less substantial and impending. *See* Dkt. No. 56-4 at 11-12.

14

Accordingly, the undersigned respectfully recommends a finding that Plaintiff lacks an injury-in-fact sufficient to confer Article III standing.

**B.     Redressability**

In support of its motion, Plaintiff also contends that Article III's standing requirements are not met because this Court, even if it were to accord complete relief to Plaintiff, could not properly redress Plaintiff's injury.  *See* Dkt. No.  56-5 at 6, 13.  Based on the record before the Court, the undersigned agrees.

In its Motion, Plaintiff contends that it "never sought money damages nor an injunction stopping the appointment of a dealer in Rockville Centre[,]" and that "even if [Plaintiff] prevails in this action and [Defendant] is enjoined from changing [Plaintiff's] PMA, nothing would stop [Defendant] from appointing a dealer in or around Rockville Centre." Dkt. No. 56-5 at 6.  Plaintiff argues that because an injunction under Dealer Act § 469(1) would not stop Defendant from appointing a dealer in Rockville Centre, the requested relief would fail to "more likely than not [leave Plaintiff] in [a] different position than [it is] now," and a lack of redressability defeats Plaintiff's Article III standing.  *Id*. at 13 (quoting *Watershed Towns*, 552 F. 3d 216 at 218).

Defendant, alternatively, contends that any alleged harm suffered by Plaintiff could be redressed by relief fashioned by this Court.  *See* Dkt. No. 57 at 9.  Indeed, Defendant asserts that "[Plaintiff's] owners have all testified that their primary concern in this lawsuit is to prevent [Defendant] from adding a Genesis dealer in close proximity to [Plaintiff]."  *Id*.  Defendant additionally states that "[t]he injunction [Plaintiff] seeks would, if granted, redress the harm Michael Koufakis identifies by preserving the size of [Plaintiff's] existing PMA."  *Id*.

15

Here, assuming, *arguendo*, that Plaintiff has sufficiently alleged an injury-in-fact (which, as discussed *infra*, it has not), the undersigned finds that this Court could not redress such an injury, and that Plaintiff lacks Article III standing on this ground as well.

To be clear, the relief Plaintiff seeks, as indicated in the Amended Complaint and its pre-motion letter seeking leave to move for summary judgment, is to obtain a declaration of Defendant's noncompliance with the Dealer Act, which imposes a 90-day notice period before certain changes to dealer franchise agreements, as well as an automatic stay, pending adjudication of such challenged changes. *See* Dkt. Nos. 25 at 7 (seeking injunctive relief under Dealer Act § 469(1) prohibiting Defendant from modifying Plaintiff's PMA as stated in the Franchise Modification Notice, pending determination of the Court, as well as costs and attorneys' fees), 44 at 1, 3 (seeking leave to move for summary judgment on the issue that Defendant failed to comply with the 90-day notice procedures of Dealer Act §463(2)(ff)(1)).

Upon review of the record, the undersigned credits Plaintiff's assertion that, even if the Court accorded full relief to Plaintiff as noted directly above, Defendant could still appoint a dealer at the Rockville Centre open point. *See Lujan,* 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotation marks omitted). Similarly, if the Court granted full relief to Plaintiff in enjoining Defendant from modifying Plaintiff's PMA, "there is no basis [] to conclude that Plaintiff would more likely than not be in any different position than" it is now. *Watershed Towns*, 552 F. 3d at 218.

Accordingly, the undersigned respectfully recommends a finding that Court could not redress any injury alleged by Plaintiff, and that Plaintiff lacks Article III standing on this basis as well

16

### IV. Conclusion

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's Motion be granted and this case be remanded to the Supreme Court of the State of New York, Queens County.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to this Report and Recommendation must be filed within fourteen days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    Brooklyn, New York
          August 16, 2025                **SO ORDERED.**

                                          /s/ Joseph A. Marutollo
                                          JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge